UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY LORENZO BOLTON,

    Plaintiff,

vs.                                        Case No. 8:03-CV-2205-T-27EAJ

JOHN E. POTTER,
POSTMASTER GENERAL,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant's motion to limit review of non-discrimination claims to the administrative record and motion for summary judgment (Dkt. 22) and Plaintiff's responses thereto (Dkts. 24, 27). Upon consideration and for the reasons discussed herein, Defendant's motion to limit review of Plaintiff's non-discrimination claims is **GRANTED.** Review of Plaintiff's non-discrimination claim for wrongful termination is limited to the administrative record and reviewed under an arbitrary and capricious standard. Defendant's motion for summary judgment is **GRANTED.** Plaintiff's wrongful termination claim and discrimination claims are dismissed.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Terry Lorenzo Bolton, initiated this action *pro se* against Defendant, John E. Potter, Postmaster General, alleging Defendant discriminated against him based on his race (African-American) and color (black) in connection with Defendant's termination of Plaintiff's employment with the United States Post Office. (Dkt. 1). Plaintiff alleges Defendant discriminated against him and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Tile VII"), as

amended, 42 U.S.C. § 2000e *et seq.* (Dkt. 1, p. 1).

Prior to initiating this lawsuit, Plaintiff filed a complaint alleging discrimination and non-discrimination claims with the Agency's Equal Employment Opportunity Office. (Dkt. 23, Ex. A, Attachment 1, p. 99). On November 2, 2001, a final agency decision was issued finding no discrimination. (Dkt. 23, Ex. A, Attachment 2). Plaintiff appealed the Agency's decision to the Merit Systems Protection Board ("MSPB"). (Dkt. 23, Ex. B).[1] The issues on appeal were whether Defendant had met its burden of proof with regard to Plaintiff's termination and whether Plaintiff had established that Defendant discriminated and retaliated against him in violation of Title VII.

The MSPB Administrative Law Judge ("ALJ") conducted a one day evidentiary hearing on March 13, 2002. The ALJ held that Plaintiff's termination should be sustained. The ALJ found that Plaintiff had not proven that Defendant had discriminated against him due to his race or color or retaliated against him for filing a discrimination lawsuit in 1995. (Dkt. 23, Ex. C). Plaintiff's petition for review of the ALJ's decision was denied. (Dkt. 23, Ex. E). The ALJ's decision was affirmed on appeal to the Office of Federal Operations ("OFO") of the Equal Employment Opportunity Commission ("EEOC"). (Dkt. 23, Ex. F).[2] Plaintiff thereafter filed this lawsuit.

Reading the allegations of the complaint in the light most favorable to Plaintiff, he alleges discrimination claims for (1) wrongful discharge, (2) hostile work environment and (3) retaliation. Plaintiff also alleges a non-discrimination claim for wrongful termination.

---

[1] Plaintiff was a "preference eligible" employee within the meaning of 39 U.S.C. 10050a)(4)(A)(I) and therefore was entitled to appeal to the MSPB.

[2] Individuals who receive a final decision of the MSPB on a case where discrimination and non-discrimination claims are alleged may petition the EEOC to review the MSPB's decision. 29 C.F.R. 1614.303(a).

Plaintiff was a city letter carrier at the Forest Hills Annex of the Tampa Florida Post Office. He was terminated from employment effective August 25, 2000. Plaintiff was issued a Letter of Decision on his termination from Paul Lavender, Manager of Customer Service Operations. In relevant part, the letter provides:

> On July 19, 2000, you were issued a notice proposing to remove you from the Postal Service based on the charge outlined in the notice.
>
> I have given full consideration to your written response dated July 30, 2000, and the attachments therein as well as all evidence of record. I find, however that the charge . . . are [sic] fully supported by the evidence and warrants your removal from the Postal Service.
>
> **Charge: Improper Conduct - Threats**, as an employee of sixteen years, you are well aware of your responsibility to conduct yourself in an appropriate manner and that there is a zero tolerance for threats of violence. Your anger and hostility toward a coworker [Phil Castellano] and your manager [Debra Draga] created a concern for their safety as well as the safety of the work environment. . . . You are also fully aware that the Postal Service has a Zero Tolerance Policy on threats of violence in the workplace. Your actions on the afternoon of March 29, 2000, were in clear violation of Postal regulations and policies. The Postal Service has the responsibility to provide employees with a work environment free of violent threats. We cannot condone, tolerate or foster threatening behavior and comments such as those that you displayed on March 29, 2000.

(Dkt. 23, Ex. A, p. 19).

Plaintiff disputes Defendant's charge of improper conduct and denies threatening co-worker Phil Castellano and manager Debra Draga. According to Plaintiff, on March 29, 2000, Castellano was "trying to incite [Plaintiff] for whatever his reason was." (Plaintiff Depo., p. 22). Plaintiff was trying to clock out when Castellano asked "whether or not [Plaintiff] wanted to take him down." (Plaintiff Depo., p. 30). Plaintiff thought Castellano said "I don't like what's going down" so Plaintiff responded "I don't like what's going down either . . ." *Id.* at 31. Plaintiff denies threatening

3

Castellano or Debra Draga. *Id.* at 32, 34.

According to Plaintiff, co-worker Phil Castellano frequently harassed him by making "unsolicited negative comments". (Plaintiff Depo., p. 11). Plaintiff testified that he talked about Plaintiff with other co-workers, stating Plaintiff "ain't put a piece of mail on the table . . . stuff like that." (Plaintiff Depo., p. 43).[3] In his appeal before the MSPB, Plaintiff testified that in 1997 he overheard Castellano and another co-worker talking about eating watermelon, which Plaintiff believed was a racial slur. (Dkt. 23, Ex. E, p. 12). According to Plaintiff, Castellano made racially charged comments to him by "mention[ing] several times that a black man should not carry that route in that area, in that neighborhood." (Plaintiff Depo., p. 7). Plaintiff testified that Castellano would "say [it] every month or so." *Id.* Castellano also told Plaintiff that if "God was black, [Castellano] would rather go to hell" and that blacks are slow and lazy. (Plaintiff Depo., p. 13).[4]

According to Plaintiff, he "approached Management" "on several occasions" "in seeking relief from Castellano's constant harassment." (Plaintiff Depo., p. 11). Prior to the March 29, 2000 incident, Castellano and Plaintiff were directed by management to stay away from each other. (Plaintiff Aff., ¶¶ 3, 4).

Plaintiff claims that Lavender decided to terminate him in retaliation for Plaintiff filing a

---

[3] Plaintiff admitted to calling Castellano "king of the jackasses". (Plaintiff Depo., p. 35).

[4] Plaintiff also testified that another co-worker, Lynda Ulmer, overhead Castellano refer to Plaintiff as a "nigger". (Plaintiff Depo., p. 52). This testimony, however, is hearsay and cannot be considered in opposition to Defendant's motion for summary judgment. *See Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1254 (11th Cir. 1999) (citing *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (courts cannot properly consider hearsay evidence in ruling on motion for summary judgment). During Plaintiff's appeal to the MSPB, the ALJ found Ulmer's testimony unbelievable, finding that Ulmer's written statement did not support the use of the N-word, noting that she used the word "negro", which is a Spanish word and is not derogatory but descriptive. The ALJ found Ulmer's use of the word "negro" consistent with Castellano's testimony that the conversation in question was conducted in Spanish and that he did not use the word "nigger". (Dkt. 23, Ex. E, p. 12).

4

discrimination lawsuit against Defendant in 1995. According to Plaintiff, Lavender was aware of the 1995 lawsuit when he decided to terminate Plaintiff. Plaintiff avers that on August 9, 2000, union representative John Watts telephoned Plaintiff and told him that Lavender stated that Plaintiff had "stepped on too many toes . . ." (Dkt. 23, ¶ 10). Lavender, however, avers that he was not aware of the 1995 lawsuit when he decided to terminate Plaintiff's employment in June 2000 for threatening Castellano and Draga. (Dkt. 23, Ex. I, ¶ 4).

## DISCUSSION

### I. NON-DISCRIMINATION CLAIMS

"5 U.S.C. § 7703 provides for judicial review of decisions of the Merit Systems Protection Board. Generally, the Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals of Board determinations." *See Kelliher v. Veneman*, 313 F.3d 1270, 1274 (11th Cir. 2002) (citing 5 U.S.C. § 7703(b)(1)). "In cases where certain discrimination claims are presented before the MSPB, however, the plaintiff may seek review in district court." *Id.* "In these mixed cases where discrimination claims as well as claims not based on discrimination were both presented before the Board, the appeals are not bifurcated; instead, the district court has jurisdiction to review both the discrimination and non-discrimination claims." *Id.* (citations omitted). "The discrimination claims are [ ] subject to trial de novo by the reviewing court." 5 U.S.C. § 7703(c). The MSPB's determinations regarding the plaintiff's other claims are reviewed under an arbitrary and capricious standard. *Id.* (citing 5 U.S.C. § 7703(c)).

Reading the allegations of Plaintiff's complaint in the light most favorable to Plaintiff, he alleges a non-discrimination claim for wrongful termination. Where, as here, an employee appeals a termination decision to the MSPB, the agency must prove the charges by a preponderance of the

5

evidence. *See* 5 U.S.C. § 7701(c)(a)(B). The agency must show that the charges relate to the efficiency of service. *See* U.S.C. § 7513. The agency must also demonstrate the reasonableness of the agency imposed penalty. *See Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 307 (1981).

In accordance with *Kelliher*, the MSPB's determination on Plaintiff's unlawful termination claim will be reviewed under an arbitrary and capricious standard. *See Kelliher*, 313 F.3d at 1274. Accordingly, the MSPB's decision will be reviewed to ensure that the determination was not (1) arbitrary or capricious, (2) made without regard to law, or (3) based on insubstantial evidence. *Id.* "In determining whether the outcome in an adjudication before . . . the MSPB is arbitrary and capricious we do not substitute our judgment for that of the agency but rather only seek to ensure that the decision was reasonable and rational." *Id.* at 1276 (citations omitted). The court "must only consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Id.* (citations omitted).

Here, the MSPB's decision on Plaintiff's unlawful termination claim was not arbitrary or capricious. The Board conducted a day long evidentiary hearing. In its written opinion, the Board recites the testimony it relied on in concluding that Defendant's charge that Plaintiff made an inappropriate threat should be sustained. In arriving at its conclusion, the Board appropriately made credibility determinations. The Board, having presided over the evidentiary hearing and having heard the live testimony and observed the demeanor of the witnesses, was in the best position to make necessary credibility determinations. The Board explains why it credited Castellano's testimony and why it found Plaintiff's testimony "internally inconsistent and contradicted by other record evidence". The Board gave specific examples:

> The appellant was evasive and he was not forthright. His overall testimony was so

6

>   inherently implausible that it seriously undermined his credibility. For example, I find that his testimony that he did not notice whether his mail had accumulated in his work area and that he did not know whether Messrs. Castellano and Kuhnast were casing his mail when he return[ed] from delivering his route defies belief. I find incredible that the appellant would have responded, "I don't like what is going down either", and thereby agree with Mr. Castellano's statement that he (the appellant) was "ripping off" the postal service. If that is what the appellant said why would Mr. Castellano then say, "That's a threat".

(Dkt. 23, Ex. E, 2 -9).

The Board found that Plaintiff became angry on March 29, 2000, started ranting and raving, threw mail on the floor, kicked a garbage can and said in an intimidating manner to Castellano: "Castellano and Draga are going down together." (Dkt. 23, Ex. E, p. 3). The Board found that the threat of physical harm was work related and sufficient to warrant imposition of punishment. After weighing the relevant factors, the Board determined that despite Plaintiff's seventeen years of federal civil service, the facts supported the penalty imposed and that Plaintiff's removal promoted the efficiency of the postal service. (Dkt. 23, Ex. E, p. 15).

The Board's decision was made with due regard to law and was based on substantial evidence. Accordingly, there was no clear error in the judgment of the Board when it concluded that Defendant's charge of improper conduct should be sustained and that the decision to terminate Plaintiff was reasonable. Accordingly, Defendant's motion for summary judgment on Plaintiff's

wrongful termination claim is granted.[5]

## II. DISCRIMINATION CLAIMS

In accordance with *Kelliher*, Plaintiff's discrimination claims are reviewed *de novo* and subjected to ordinary summary judgment standards. *See Kelliher*, 313 F.3d at 1274. Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56. The Court must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Judgment in favor of a party is proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on the issue before the Court. Fed. R. Civ. P. 56.

---

[5] In his affidavit, Plaintiff avers that Defendant's attorney, during the appeal to the MSPB, "did willfully deceit and mislead the [ALJ]" by withholding evidence, obstructing "federal process" and submitting a police report that Plaintiff alleges Castellano falsely filed. (Dkt. 28, ¶ 12). Plaintiff has submitted absolutely no evidence supporting his allegations.

Plaintiff also claims that the ALJ wrongfully denied Plaintiff's request to call L. David Brubaker and Linda M. Ulmer as witnesses and that the ALJ wrongfully interrupted his cross-examination of Timothy Roth and limited John Watts's testimony. (Dkt. 24, p. 5). The hearing transcript reveals that at the beginning of the hearing, Plaintiff requested leave to add Brubaker, Ulmer and Watts as witnesses. The ALJ denied Plaintiff's request as to Ulmer and Brubaker because Plaintiff had not talked to the witnesses prior to the hearing and could not represent what they would testify to. (Dkt. 32, p. 14-17). The ALJ permitted John Watts to testify. While the ALJ did not permit Plaintiff to go into matters that had been already covered, he specifically asked Plaintiff whether he had any more questions for Mr. Watts before he dismissed him. (Dkt. 32, pp. 358, 365) ("Judge Gomez: Sir, did you want to ask any more questions? Mr. Bolton: No . . ."). The ALJ asked both parties whether they had any more questions for Mr. Roth before releasing him and specifically explained that once he released the witness, he would not be able to be recalled. (Dkt. 32, p. 29 ) (Mr. Bolton: . . . And so I guess that's all the questions I have. I'm very sorry. . . . Judge Gomez: You didn't have any further questions for him. Did you want to release him? . . . Judge Gomez: Okay. Because the witness can go home or go wherever . . ."). There simply is no evidence that the ALJ denied Plaintiff due process or the opportunity to present his case. The ALJ did not commit a clear error in judgment or rule without regard to law.

8

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. Plaintiff's evidence must be significantly probative to support his claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### Disparate Treatment

"Disparate treatment" occurs when an employee is treated less favorably because of his protected characteristic, namely, religion, color, sex, national origin, or race. *See International Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 335 n.15 (1977). To be successful on a disparate treatment claim, "proof of discriminatory motive is critical." *Id.* Since Plaintiff has not offered any direct evidence of discriminatory motive, the *McDonnell Douglas* burden shifting framework is applicable. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973).[6]

Pursuant to the *McDonnell Douglas* framework, a plaintiff has the initial burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. *Id.* If the plaintiff succeeds in establishing a *prima facie* case of discrimination, the burden shifts to the defendant to

---

[6] The plaintiff may establish a *prima facie* case of discrimination under Title VII on the basis of statistical proof of a pattern of discrimination, *see Wilson v. AAA Plumbing Pottery Corp.*, 34 F.3d 1024, 1027 (11th Cir.1994), or on the basis of direct evidence of discrimination, which consists of "evidence which, if believed, would prove the existence of discrimination without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir.1989). When, however, direct evidence is not available, a plaintiff must rely on circumstantial evidence to prove discriminatory intent using the framework established in *McDonnell Douglas*.

articulate some legitimate non-discriminatory reason for its action. *Id.* Should the defendant carry its burden, the plaintiff has an opportunity to prove by the preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination. *Id.*

A plaintiff establishes a *prima facie* case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to an adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677; *see also Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997).

Plaintiff has not shown that Defendant treated similarly situated employees outside his classification more favorably than himself. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield,* 115 F.3d at 1562 (citations omitted). In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1309 (8th Cir.1994). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Maniccia v. Brown,* 171 F.3d 1364, 1369 (11th Cir 1999) (citations omitted). "We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges. *Id.*

Plaintiff was terminated for threatening a co-worker and a manager. Although he continues

10

to dispute that allegation, he has failed to present even one similarly situated co-worker outside of his protected class who made threats to a co-worker and supervisor but received more favorable treatment. Accordingly, Plaintiff fails to establish a *prima facie* case of disparate treatment. Defendant's motion for summary judgment on this claim is accordingly granted.

## Hostile Work Environment

Defendant contends summary judgment on Plaintiff's harassment claim should be granted because Plaintiff failed to allege a hostile work environment claim in his EEOC Charge and therefore failed to exhaust his administrative remedies. A Title VII action may be based "not only upon the specific complaints made in the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000).

Plaintiff's EEOC Charge does not mention harassment and he does not allege that he was subjected to a hostile work environment. (Dkt. 23, Ex. B, p. 99). Notwithstanding, the facts surrounding Plaintiff's harassment claim, namely Castellano's harassing comments, would likely have been discovered during the course of the EEOC investigation of Plaintiff's allegation that he never threatened Castellano and that he was wrongfully terminated on that basis. Accordingly, Plaintiff's harassment claim is "like or related to" the allegations contained within his EEOC Charge and this Court has jurisdiction to entertain that claim.

To establish a *prima facie* case of hostile work environment, a plaintiff must prove that: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was

11

sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999)). "[T]o be actionable, th[e] behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives . . . to be abusive." *Id.* at 1276 (internal quotations and citations omitted).

Here, Plaintiff fails to establish that the alleged harassment was objectively sufficiently severe or pervasive. In evaluating the objective severity of the harassment, the court considers, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* (citations omitted). When viewed in the light most favorable to Plaintiff, the alleged acts of harassment were too infrequent, were not severe and were more akin to offensive utterances. According to the record evidence, all of the alleged harassing behavior came from a co-worker without supervisory authority over Plaintiff.[7]

Castellano's comments occurred over a number of years. Most of the alleged comments cannot be characterized as harassment based on Plaintiff's race or color, such as Castellano's criticisms of Plaintiff's job performance. The incidents alleged by Plaintiff simply fall short of the

---

[7] The ALJ noted that during a "prehearing conference" Plaintiff claimed that supervisors Debra Draga and Ron Dandlin harassed him and called him the "N-word" to his face. The ALJ found "no evidence that Ms. Draga or Mr. Sandlin, or any supervisory or managerial official, ever used the 'N-word' or tolerated a discriminatory or hostile environment in regard to the [Plaintiff]." (Dkt. 23, Ex. E, p. 11). Indeed, in this lawsuit, Plaintiff has presented no evidence of a supervisor using the "N word".

severe and frequent racial harassment required for hostile work environment claims. *See e.g. Miller*, 277 F.3d at 1276-77 (requisite frequency and severity met where plaintiff's supervisor "hurled the ethnic slurs at [plaintiff] three to four times a day" and where evidence demonstrated that derogatory names were used in an intimidating manner and "shouted . . . at [plaintiff] during the course of berating him for his job performance..."). Accordingly, Defendant's motion for summary judgment on Plaintiff's hostile work environment claim is granted.

## Retaliation

In order to establish a *prima facie* case of retaliation, Plaintiff must show: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between his protected activity and the adverse employment action. *See Gupta v. Florida Bd. Of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). Plaintiff fails to establish a causal link between the filing of his discrimination lawsuit in 1995 and Lavender's decision to terminate him in June 2000. Accordingly, Plaintiff fails to establish a *prima facie* case of retaliation.

"This circuit has interpreted the causal link requirement broadly; 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Davis v. Town of Lake Park, Florida*, 47 F.3d 1068, 1074 (11th Cir.1995) (citations omitted). "For purposes of a *prima facie* case, 'close temporal proximity' may be sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'" *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir.2000) (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir.1999)).

Here, Plaintiff is unable to establish when Lavender became aware of the 1995 lawsuit, if he did. Plaintiff relies on a statement he attributes to Watts that Lavender told Watts that he knew about

13

the 1995 lawsuit. Plaintiff's testimony is inadmissable hearsay. Moreover, Watts testified that "everyone knew" about the lawsuit, but that Lavender never told him that Lavender knew about the lawsuit. (Dkt. 32, p. 359). Viewing the evidence in the light most favorable to Plaintiff and assuming the 1995 lawsuit was common knowledge, the lapse of *five years* between the filing of Plaintiff's discrimination lawsuit and Lavender's decision to terminate Plaintiff is insufficient to establish a causal nexus to support a retaliation claim. In this Circuit and others, a lapse of three or four months has been found to be insufficient to demonstrate a causal nexus. *See Higdon v. Jackson*, 393 F.3d 1211, 1220-21 (11th Cir.2004) (a three-month period between protected activity and adverse action was insufficient to establish causal connection in ADA case); *see also, Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997) (four-month time lag between plaintiff's participation in protected activity and his termination was, by itself, insufficient to justify an inference of causation); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997) (affirming district court's holding that three-month period of time between plaintiff's protected activity and termination was, standing alone, insufficient to establish a causal connection).

Other than Plaintiff's bare assertion that Lavender knew about the lawsuit prior to making the termination decision, an assertion contradicted by Lavender's sworn statement, Plaintiff has presented no evidence supporting a causal link between his protected activity and the adverse employment action. Plaintiff's assertion that union representative John Watts told Plaintiff that Lavender said Plaintiff had "stepped on too many toes", even if said, is too vague to establish that Lavender was referring to the 1995 lawsuit as a reason for Plaintiff's termination.

In order to survive summary judgment, Plaintiff's evidence must be significantly probative to support his claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Here,

other than Plaintiff's bare assertions, there is no evidence demonstrating that Plaintiff was terminated in retaliation for filing the discrimination lawsuit in 1995. Accordingly, Defendant's motion for summary judgment on Plaintiff's retaliation claim is granted.

All pending motions are denied as moot and the Clerk is directed to close this case.

DONE AND ORDERED in chambers this 13th day of January, 2006.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record